**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

DALE BARNES,

    Plaintiff,

v.                                              Case No. 10-12501

CHAD HAYSE, et al.,

    Defendants.

_____/

**OPINION AND ORDER REMANDING PLAINTIFF'S STATE LAW CLAIM**

Pending before the court is Plaintiff's complaint which alleges the following counts:

- Count I, violations of constitutional rights secured by the Fourth Amendment and actionable under 42 U.S.C. § 1983 against Defendants Chad Hayse, Mike Welch, Dave Bowerman, John Allen, Miller, and Rick Cadez

- Count II, violations of constitutional rights secured by the Fourth Amendment and actionable under 42 U.S.C. § 1983 against Defendant City of Melvindale

- Count III, supervisory liability for violations actionable under 42 U.S.C. § 1983 against Defendants Bowerman, Hayse, Miller, and Cadez

- Count IV, conspiracy to violate constitutional rights under 42 U.S.C. § 1985

- Count V: gross negligence

Counts I-IV state claims under federal law; Count V alleges a claim under state law.

As a preliminary matter, the court has original jurisdiction over Plaintiff's § 1983 and § 1985 claims. *See* 28 U.S.C. § 1331. Because Plaintiff's state law claim arises out of the same incident and shares a common nucleus of operative fact, the court could exercise its supplemental jurisdiction over the state law claim. *See* 28 U.S.C. § 1367. However, the court now considers if granting supplemental jurisdiction is in the interest of judicial economy, convenience, fairness, and comity. The court determines that it is not, and will remand Plaintiff's state law claim.

**I. BACKGROUND**

On July 3, 2010, a "gruesome and horrific" accident involving fireworks resulted in the death of Danielle Barse. (Compl. ¶¶ 20-21.) Plaintiff's complaint alleges that, shortly thereafter, Plaintiff was called to the Melvindale police station as part of the investigation into Barse's death. (Compl. ¶¶ 24-27.) Plaintiff contends that Defendant Bowerman confined Plaintiff in a cell upon arrival without any formal procedure or charges. (Compl. ¶¶ 28-29.) According to Plaintiff, Defendants Hayse and Welsh questioned Plaintiff and refused to allow Plaintiff to leave without making a statement regarding Barse's death. (Compl. ¶¶ 30-36, 39, 41-42.) Plaintiff finally alleges that he was only released after being held for more than 48 hours and after writing a statement of facts as directed by Defendants. (Compl. ¶¶ 42-46.)

## II. DISCUSSION

### A. SUPPLEMENTAL JURISDICTION OVER STATE LAW CLAIMS

A district court has the power to dismiss or remand claims *sua sponte* for lack of subject matter jurisdiction. *See, e.g.*, *Douglas v. E.G. Baldwin & Assocs.*, 150 F.3d 604, 607 (6th Cir. 1998). Claims with original jurisdiction in a district court have either federal question jurisdiction pursuant to 28 U.S.C. § 1331 or diversity jurisdiction pursuant to 28 U.S.C. § 1332. In some circumstances, additional claims alleging violations of only state law may be heard under the supplemental jurisdiction granted pursuant to 28 U.S.C. § 1367.

In *United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966), the Supreme Court broadly authorized federal courts to assert jurisdiction over state law claims when there existed a "common nucleus of operative fact" comprising "but one constitutional 'case,'" so long as the court had original jurisdiction over at least one claim. *Id.* at 725. While this decision granted district courts broad power over pendent state claims, it also recognized discretion in hearing such claims: "[P]endent jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over the state claims . . . ." *Id.* at 726. The Court stated that pendent party jurisdiction may be denied "if the federal claims are dismissed before trial," if "it appears that the state issues substantially predominate," or "if the likelihood of jury confusion" would be strong without separation of the claims. *Id.* at 726-27.

3

Congress later codified the power of a federal court to hear state claims. 28 U.S.C. § 1367 (2006). Similar to the standards articulated in *Gibbs*, the statute recognizes a court's discretion to decline to exercise supplemental jurisdiction if:

> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

*Id.* Subsection four is applicable to this case.

Though § 1367 technically superseded *Gibbs*, courts agree that "the exercise of discretion . . . is still informed by whether remanding the pendent state claims comports with the underlying objective of 'most sensibly accommodating' the values of 'economy, convenience, fairness and comity.'" *Executive Software N. Am., Inc. v. U.S. Dist. Court*, 24 F.3d 1545, 1557 (9th Cir. 1994) (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)); *see also* H.R. REP. NO. 101-734, at 29 (1990), *reprinted in* 1990 U.S.C.C.A.N. 6860, 6875 (indicating that, under *Gibbs* and "current law, subsection (c) requires the district court, in exercising its discretion, to undertake a case-specific analysis.").

## B. REMANDING PURSUANT TO 28 U.S.C. § 1367(c)(4)

A district court may deny supplemental jurisdiction pursuant to § 1367(c)(4) if, "in exceptional circumstances, there are other compelling reasons

4

for declining jurisdiction." 28 U.S.C. § 1367(c)(4) (2006). "Congress's use of the word 'other' to modify 'compelling reasons' indicates that what ought to qualify as 'compelling reasons' for declining jurisdiction under subsection (c)(4) should be of the same nature as the reasons that gave rise to the categories listed in subsections (c)(1)-(3)." *Executive Software*, 24 F.3d at 1557. Once the court decides that there are compelling reasons to decline jurisdiction, the factors that inform this decision usually will demonstrate how the circumstances confronted are "exceptional." *Id.* at 1558.

### 1. "Compelling Reasons" for Remanding Plaintiff's State Law Claim

Courts generally accept that "compelling reasons for the purposes of [§ 1367] (c)(4) . . . should be those that lead a court to conclude that declining jurisdiction best accommodates the values of economy, convenience, fairness and comity." *Id.* at 1557 (internal citations omitted); *see also Palmer v. Hosp. Auth. of Randolph County*, 22 F.3d 1559, 1569 (11th Cir. 1994). When deciding whether to agree or decline to exercise jurisdiction over supplemental state claims, the court considers the circumstances of the particular case, the nature of the state law claims, the character of the governing state law, and the relationship between the state and federal claims (including the possibility of jury confusion).

Litigation in federal court that mixes federal law claims with supplemental state law claims can cause procedural and substantive problems; in the interests of judicial economy and convenience, these problems should be avoided. *Id.* Even where, as in this case, the federal and state claims arise out of the same

5

factual background, the simultaneous litigation of such claims may prolong pre-trial practice, complicate the trial, lengthen and make more complex the jury instructions leading to potential confusion of the jury, result in inconsistent verdicts and cause post-trial problems with respect to judgment interest and the availability of prevailing party attorney fees. Consequently, the apparent judicial economy and convenience to the parties of a court exercising supplemental jurisdiction over state claims may be substantially offset by problems simultaneously created. The court will review the federal and state claims in some detail to determine if supplemental jurisdiction should be exercised over the state claim.

### a. Applicable Legal Standards

To prove claims actionable under § 1983, Plaintiff must show that he was deprived of a right secured by the Constitution and that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir.1996). An objective reasonableness standard of adjudication is used for Plaintiff's Fourth Amendment claims involving improper arrest and imprisonment. *See Graham v. Connor*, 490 U.S. 386, 396 (1989) ("The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."); *Pleasant v. Zamieski*, 895 F.2d 272, 276 (6th Cir. 1990) (The standard in a Fourth Amendment seizure case is whether the actions are "objectively reasonable under the circumstances.").

Plaintiff's state law gross negligence claim, on the other hand, requires a showing "that the defendant's conduct was so reckless as to demonstrate a substantial lack of concern for whether an injury results." *Estate of Bolton, ex rel. Warner v. Center for Forensic Psychiatry*, No. 288979, 2010 WL 571856, at *4 (Mich. Ct. App. Feb. 18, 2010) (citing *Kendricks v. Rehfield*, 716 N.W.2d 623 (Mich. Ct. App. 2006)). If this claim remained in the case, the court would be required to present to the jury both the state definition of "gross negligence" and the federal definition of "objective reasonableness." The former asks whether, "if an objective observer watched the actor, he could conclude, reasonably, that the actor simply did not care about the safety or welfare of those in his charge." *Tarlea v. Crabtree*, 687 N.W.2d 333, 339-40 (Mich. App. 2004). The latter asks whether Defendants acted as would "a reasonable officer on the scene." *Graham,* 490 U.S. at 396  This distinction between these similar standards would certainly require lengthier jury instructions, and it would create a significant likelihood of jury confusion.

### b. Immunity

Plaintiff's state and federal law claims also apply different versions of immunity, a further complication in trying them together. Under federal law, "government officials performing discretionary functions generally are granted a qualified immunity and are 'shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Wilson v. Layne*, 526 U.S. 603, 609 (1999) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In

7

determining if a government official is entitled to such qualified immunity, a court must first determine if a federal right was violated and, if so, whether that right was "so clearly established that a reasonable official would understand that his particular conduct would violate that right." *Wilkins v. City of Royal Oak*, No. 04-73276, 2005 U.S. Dist. LEXIS 42474, at * 26 (E.D. Mich. 2005). A court must also determine if the officer was performing a discretionary function at the time. *Id.* This immunity is relatively straightforward and turns on the objective reasonableness of the official's actions. *See generally Harlow*, 457 U.S. 800.

Immunity under state law is remarkably different, as it applies a *subjective* standard of review to the official's actions. Unlike federal qualified immunity, officers receive no immunity for gross negligence. Mich. Compl. Laws § 691.1407(2)(c). And, to further complicate the matter, application of this immunity is not a straightforward process:

> Governmental immunity [under Michigan law] has been, at best, a confusing area of the law for the bench and bar of our state for many years and, unfortunately, attempts to explain it have often resulted in increasing the quagmire in which we collectively have found ourselves on this subject.

*Sudul v. City of Hamtramk*, 562 N.W.2d 478, 490 (Mich. App. 1997) (Murphy, J., dissenting). The differences in the applicability of governmental immunity between Plaintiff's federal and state claims, as well as the "quagmire" that has evolved regarding the application of such immunity to state claims under Michigan law, are additional factors that would complicate the simultaneous trial of federal claims, confuse the jury, and inconvenience the parties.

8

### c. Recoverable Damages

Recoverable damages are drastically different for Plaintiff's federal and state claims.  Under federal law, a successful § 1983 Plaintiff may recover punitive damages against individual defendants.  *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247 (1981).  In direct contrast, "[i]n Michigan, the courts . . . refuse to allow the recovery of punitive damages." *Fellows v. Superior Prods. Co.*, 506 N.W.2d 534, 536 (Mich. Ct. App. 1993) (quoting *In re Disaster at Detroit Metro. Airport*, 750 F. Supp. 793, 805 (E.D. Mich. 1989)).  As a result, Plaintiff would be entitled to seek punitive damages against the officers for his § 1983 claims but not for his gross negligence claim.

Punitive damages, by definition, "are not intended to compensate the injured party, but rather to punish the tortfeasor." *City of Newport*, 453 U.S. at 266.  The jury would be instructed that they *are* permitted to "punish" for an egregious Fourth Amendment unreasonable seizure violation but that they are *not* so permitted for even an obvious violation of state law gross negligence.  This difference could easily lead to an artificially—and unfairly—high award for proven § 1983 claims to "compensate" for the jury's inability to award punitive damages for the state law claim.  It could also result in an unfairly low award if the jury were to incorrectly conclude that, since Michigan law does not permit punitive damages, proven federal claims are similarly undeserving of such an award.  In either scenario, the different treatment of punitive damages under state and federal law could result in jury confusion, lengthy jury instructions, and an unfair verdict.

### d. Compelling Reasons Exist to Remand Plaintiff's State Claim

The potential for jury confusion has been identified as a compelling reason for a district court to decline to exercise supplemental jurisdiction. *Gibbs*, 383 U.S. at 727; *Barbetta v. Chemlawn Services Corp.*, 669 F. Supp. 569, 571 (W.D.N.Y. 1987); *Gasque v. King*, No. 90-00470, 1991 U.S. Dist. LEXIS 19260, at *5-6 (M.D.N.C. 1991); *Padilla v. City of Saginaw*, 867 F. Supp. 1309, 1315 (E.D. Mich. 1994); *Blue Dane Simmental Corp. v. American Simmental Ass'n*, 952 F. Supp. 1399, 1404 (D. Neb. 1997); *see also* Charles A. Wright & Arthur R. Miller, FEDERAL PRACTICE & PROCEDURE § 3567.1, n. 46. (2d ed. 1984). In considering this potential, as well as the interests of economy, convenience, fairness and comity, the court finds that the state claim should be remanded. To exercise supplemental jurisdiction over this claim would result in confusion, inconvenience and potentially unfair results given the systematic disparity between these claims, including their various legal standards, potential immunity from suit, potential vicarious liability, and potentially recoverable damages. Therefore, the court will remand Plaintiff's state law claim of gross negligence.

### 2. This case presents "Exceptional Circumstances"

Courts must ensure that the reasons for declining to exercise supplemental jurisdiction identified as "compelling" are not deployed in circumstances that are not "exceptional." *Executive Software*, 24 F.3d at 1558. Courts agree that the inclusion of the phrase "exceptional circumstances" limits the broad discretion that district courts once entertained under *Gibbs* to deny

supplemental jurisdiction in any case.  *See, e.g.*, *Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 140 F.3d 442, 448 (2d Cir. 1998); *Executive Software*, 24 F.3d at 1558.  However, Congress only "sounded a note of caution" and did not restrict a district court's ability to remand claims only in cases that were "ridiculous" or "impractical."  *Executive Software*, 24 F.3d at 1558, 1560 (citing *Hays County Guardian v. Supple*, 969 F.2d 111 (5th Cir. 1992) (holding that exceptional circumstances were present when parallel state proceedings were underway and therefore the adjudication of state claims would be a "waste of judicial resources.")).

The court finds that exceptional circumstances are present in this case in weighing the likelihood of jury confusion, judicial inefficiency, substantial inconvenience to the parties, and potential unfairness in outcome which could readily result by attempting to resolve all claims in a single trial.  Though there would be some duplication of effort required by Plaintiff and Defendants in separately pursuing the federal and state claims, the court finds that any advantages to be gained by trying all claims together are outweighed by the potential for confusion of the issues, legal theories, and possible relief.  Thus, the court will not exercise supplemental jurisdiction and will remand the state law claim.

## III. CONCLUSION

Plaintiff's state law claim for gross negligence does not have original jurisdiction in federal court. The inclusion of Plaintiff's state claim with Plaintiff's claims for unreasonable seizure under 42 U.S.C. § 1983 and conspiracy under 42 U.S.C. §1985 could lead to jury confusion, judicial inefficiency, inconvenience to the parties and an unfair outcome. Pursuant to 28 U.S.C. §§ 1367(c)(4), the court exercises its discretion to decline supplemental jurisdiction over Plaintiff's state law claim. Accordingly,

IT IS ORDERED that Plaintiff's state law claim of gross negligence (Count II) is hereby REMANDED to the Circuit Court for the County of Wayne.

IT IS FURTHER ORDERED that only Plaintiff's claims arising under federal law, 42 U.S.C. § 1983 (Counts I-III) and 42 U.S.C. § 1985 (Count IV), now remain before this court.

                                                s/Robert H. Cleland
                                                ROBERT H. CLELAND
                                                UNITED STATES DISTRICT JUDGE

Dated: August 30, 2010

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, August 30, 2010, by electronic and/or ordinary mail.

                                                s/Lisa G. Wagner
                                                Case Manager and Deputy Clerk
                                                (313) 234-5522